*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
STEVEN MITNICK, as assignee of CENTRAL :
JERSEY ENTERPRISES, LLC, :
:
Plaintiff, :
: Civil Action No. 17-00325 (FLW)
v. :
: OPINION
YOGURTLAND FRANCHISING, INC. and :
PHILLIP CHANG, individually and in his :
capacity as Chief Executive Officer of :
Yogurtland Franchising, Inc., :
:
Defendants. :
_____:

**WOLFSON**, **United States District Judge:**

Plaintiff Steven Mitnick ("Plaintiff"), as assignee of Central Jersey Enterprises, LLC ("CJE"), filed this action against Defendants Yogurtland Franchising, Inc. ("Yogurtland") and Phillip Chang (collectively, "Defendants"), asserting various causes of action arising from several franchise agreements existing between the parties. Presently before the Court is Defendants' motion to compel arbitration and stay the action, or alternatively, to dismiss Plaintiff's Complaint. Defendants argue that the parties are bound, by the terms of their franchise agreements, to arbitrate the claims asserted in Plaintiff's Complaint. For the reasons set forth below, the Court finds that Plaintiff's claims fall within the scope of the parties' arbitration agreements, and therefore, Defendants' motion to compel arbitration is GRANTED and this case is STAYED pending arbitration.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

1

For the purposes of the instant motion, the Court will only recount the relevant facts. Defendant Yogurtland is an international corporation, headquartered in Irvine, California, that is engaged in the business of franchising frozen yogurt restaurants. *See* Compl. ¶ 3. Defendant Phillip Chang ("Chang") is the president and chief executive officer of Yogurtland. *Id.* at ¶ 4. Between December 2010 and April 2014, CJE entered into seven franchise agreements (collectively, the "Franchise Agreements") with Yogurtland, pursuant to which CJE operated Yogurtland franchises in New Jersey and Pennsylvania. *Id.* at ¶¶ 9-16. CJE subsequently became insolvent, and on January 22, 2016, seeking to liquidate its assets for the benefit of its creditors, CJE conveyed to Plaintiff Steven Mitnick a deed of assignment for the benefit of creditors (the "Deed"), pursuant to New Jersey's Assignment for the Benefit of Creditors Statute, N.J.S.A. 2A:19-1 *et seq.*. *Id.* at ¶ 5.[1]

Each of the seven Franchise Agreements contains an arbitration provision. The first and second Franchise Agreements, dated August 23, 2010 and February 3, 2011, respectively, contain arbitration clauses that provide, in relevant part:

> 21.5. **Arbitration.** Any controversy or claim arising out of or relating to this Agreement or its breach, including without limitation, any claim that this Agreement or any provision is invalid, illegal, void or voidable shall be submitted to arbitration before and in accordance with the commercial arbitration rules of the American Arbitration Association. . . The arbitration shall be conducted before an arbitrator who is familiar

---

[1] Pursuant to N.J.S.A. 2A:19-13, Plaintiff, as assignee under the Deed, has the following authority:

> Every assignee shall have as full power and authority to dispose of all of the assignor's property, except as otherwise may be provided, as the assignor had at the time of the general assignment. He may sue for and recover in his own name everything belonging or appertaining to the estate. He may compromise, settle and compound all claims, disputes and litigations of the assignor, refer the same to arbitration, agree with any person concerning the same, redeem all mortgages and conditional contracts, and generally act as and do whatsoever the assignor might have lawfully done in the premises.

N.J.S.A. 2A:19-13.

2

with franchising and franchise law. . . This arbitration provision shall be governed by and construed under the Federal Arbitration Act (9 U.S.C. Section 1 et seq.). Judgment on an arbitration award may be entered in any court having competent jurisdiction and shall be final, binding and non-appealable. This arbitration provision shall be deemed to be self-executing and shall remain in full force and effect after expiration or termination of this Agreement. . . Arbitration and/or mediation shall take place in Orange County, California.

Declaration of John Carlson (dated January 20, 2017) ("Carlson Dec."), Exs. A and B.

The third Franchise Agreement, dated February 2, 2012, contains an arbitration provision that provides, in pertinent part:

**15.3 Arbitration.**

(a) Except as expressly provided below, any Dispute between (i) Franchisor, and (ii) Franchisee or any Owner(s), arising out of or relating to this Agreement, its breach, enforceability, or validity is not resolved through direct negotiations or mediation will be resolved by submission to binding arbitration by and before a neutral, former judge chosen by agreement of the parties, or, if not agreed within ten (10) business days of written demand for arbitration, in accordance with the selection of a reputable arbitration services, including CPR, JAMS, and other services of equally good reputation. . . . .

(b) All hearings and other proceedings will take place in Orange County, California, or other county where Franchisor's headquarters is then located. . . the arbitrator's decision will be final and binding on the parties, and judgment thereon may be entered in any federal or state court having jurisdiction. . . . .

Carlson Dec., Ex. C. The remaining four Franchise Agreements, dated July 9, 2012, January 7, 2013, February 1, 2014, and May 15, 2014, respectively, contain identical arbitration provisions, which provide, in relevant part:

**15.3 Arbitration.**

(a) Except as expressly provided below, any Dispute between (i) Franchisor, and (ii) Franchisee or any Owner(s), arising out of or relating to the relationship of Franchisor and Franchisee, or to this Agreement or to any other agreement between Franchisor and Franchisee or any Owner(s), or to the actual or allege breach, scope, enforceability, or validity of this Agreement or of any of such other agreements, or of any provision of any of them (including the scope, enforceability, and validity of this Section 15.3) that is not resolved through direct negotiations or mediation will be resolved by submission to binding arbitration by and before a neutral, former judge chose by agreement of the parties, or, if not agreed within ten (10) business days of written demand for arbitration,

> in accordance with the selection of a reputable arbitration services, including CPR, JAMS, and other services of equally good reputation. . . . .
>
> (b) All hearings and other proceedings will take place in Orange County, California, or other county where Franchisor's headquarters is then located. . . the arbitrator's decision will be final and binding on the parties, and judgment thereon may be entered in any federal or state court having jurisdiction. . . . .

Carlson Dec., Exs. D-G.

Additionally, each of the Franchise Agreements contains a mediation clause. The 2010 and 2011 Franchise Agreements include mediation provisions that provide, in pertinent part:

> 21.4  **Mediation.**  The parties agree to mediate any dispute or claim arising out of this agreement, or any resulting transaction, before resorting to arbitration or court action in Orange County, California. The parties shall share equally the cost of the mediator. . . . .

Carlson Dec., Exs. A and B. The remaining five Franchise Agreements include mediation clauses that provide, in relevant part:

> Except as expressly provided below to the contrary, in the event of any dispute between Franchisor and any other party hereto (including the Owners) arising out of or otherwise related to this Agreement, its alleged breach, enforceability, or validity (each a "Dispute") that is not resolved through direct negotiations within a reasonable time, each party shall next attempt to resolve such Dispute through mediation before a mediator . . . . Mediation will be conducted in Orange County, California, and will be conducted and completed within forty-five (45) days following the date either party first gives notice of mediation. The fees, charges, and reimbursements of the mediator shall be shared equally by the disputing parties.

Carlson Dec., Exs. C-G.

The 2010 and 2011 Franchise Agreements also contain an identical exception to mediation and arbitration clause (the "Exception Clause"), which provides as follows:

> 21.6  **Exception to Mediation and Arbitration.**  The obligations to arbitrate or mediate shall not bind either party regarding claims related to trademarks, patents, and copyrights; any claim for fees or payments due from Franchisee to Franchisor or its affiliates; any lease or sublease of real property between the parties or their affiliated entities; requests by a party for provision or interim relief to preserve the status quo or prevent irreparable harm pending the outcome of mediation or arbitration; *any matter within the jurisdiction of a probate, small claims, or bankruptcy court*; filing of a court

4

> action to enable the recording of a notice of pending action; or any other matter provided in this agreement to be excluded from arbitration or mediation.

Carlson Dec., Exs. A and B (emphasis added).

Plaintiff alleges a series of transactions between CJE and Defendants that form the basis of his claims. To begin, Plaintiff avers that Defendants misrepresented to CJE that other parties were interested in opening a Yogurtland location in CJE's regional territory, in order to induce CJE into opening additional franchises, when, in fact, no interested or qualified prospective franchisee existed. *See* Compl. ¶ 18. Next, Plaintiff alleges that Yogurtland opened a company-owned store (the "Mt. Laurel store") within CJE's regional territory, in direct competition with CJE's stores. *Id.* at ¶¶ 19-21. Plaintiff alleges that the Mt. Laurel store did not perform well, and that CJE subsequently purchased that location from Yogurtland in order to "avoid ruining the reputation for the brand that CJE had built in the region." *Id.* at ¶¶ 23-24.[2] Plaintiff further alleges that, in connection with CJE's purchase of the Mt. Laurel store, Yogurtland agreed to provide personnel and resources to its east coast franchisees, including $10,000 in marketing support to CJE. *Id.* at ¶¶ 26-27. Plaintiff avers that, contrary to that agreement, Yogurtland never provided CJE with marketing support. *Id.* at ¶ 26. Plaintiff also alleges that Yogurtland fired several senior executives, including the operations support associate for the east coast, thus leaving CJE without any contacts to address franchise-related issues. *See id.* at ¶¶ 29-34.

Additionally, Plaintiff alleges that Defendants engaged in a pattern of disparate treatment with respect to its east coast franchisees and its company-owned west coast locations. In that regard, Plaintiff avers that only CJE and other east coast franchisees were required to make

---

[2] Specifically, on January 22, 2014, CJE and Yogurtland entered into an agreement for purchase and sale (the "Agreement of Sale"), whereby CJE purchased the Mt. Laurel store from Yogurtland, and entered into a franchise agreement to operate that store. *See* Compl. ¶ 23.

5

contributions to Yogurtland to support Yogurtland's marketing fund. *Id.* at ¶ 34. Plaintiff further alleges that Defendants withheld certain flavors, including its most popular flavor, from its east coast franchisees, and refused to address the seasonality issues faced by those locations. *See id.* at ¶¶ 36-39. Finally, Plaintiff alleges that Defendants: (i) impeded CJE's hiring capabilities; (ii) required CJE to purchase equipment from overpriced distributors; (iii) received kickbacks from those equipment distributors; (iv) failed to timely deliver required supplies to CJE's stores; (v) discontinued a loyalty card program, notwithstanding CJE's statement that the program was critical to its operations; (vi) failed to respond to CJE's inquiries as to whether Yogurtland's products were kosher; (vii) sold its products to competing stores within CJE's regional territory; and (viii) that Chang diverted at least $20,000 away from Yogurtland each month for his own personal use. *See id.* at ¶¶ 40-53.

On December 13, 2016, Plaintiff filed a five-count Complaint against Defendants, asserting claims for breach of the duty of good faith and fair dealing, violations of the New Jersey Franchise Practices Act, fraudulent inducement to contract, unjust enrichment, and breach of contract. Compl. ¶¶ 54-79. On January 24, 2017, Defendants filed the instant motion to compel arbitration and stay the action, or in the alternative, to dismiss. ECF Nos. 8-9. That motion has been fully briefed. *See* ECF Nos. 14, 16.

## II.  LEGAL STANDARD

The FAA "'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . .'" *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). The FAA was designed by Congress "'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American

6

courts, and to place arbitration agreements upon the same footing as other contracts.'" *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 536–37 (D.N.J. 2013) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). To achieve this end, the FAA provides that contract provisions containing arbitration clauses "shall be binding, allows for the stay of federal court proceedings in any matter referable to arbitration, and permits both federal and state courts to compel arbitration if one party has failed to comply with an agreement to arbitrate." 9 U.S.C. §§ 2–4. Collectively, "those provisions [of the FAA] 'manifest a liberal policy favoring arbitration agreements.'" *Beery*, 953 F. Supp. 2d at 537 (quoting *Gilmer*, 500 U.S. at 24). Therefore, "'as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Id.* (quoting *Mercury Constr. Corp.*, 460 U.S. at 24–25).

When a district court is presented with a motion to compel arbitration, it must affirmatively answer the following two questions: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of that agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). In performing this inquiry, courts apply "ordinary state-law principles that govern the formation of contracts," *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotations and citations omitted), and, "when determining whether [a] particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Century Indem. Co*, 584 F.3d at 524 (quoting *AT & T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986)).

### III.   DISCUSSION

Defendants move to compel arbitration of the claims asserted in the Complaint, on the grounds that the arbitration provisions contained in the Franchise Agreements require the parties to arbitrate claims relating to those Agreements, and each of the causes of action asserted in the Complaint arise out of the Franchise Agreements.

At the outset, the Court notes that Plaintiff does not challenge the validity of the arbitration provisions contained in the Franchise Agreements. Nor does Plaintiff dispute that the claims asserted in the Complaint arise from the Franchise Agreements. *See* Pl.'s Opp. at 1 ("[Plaintiff] asserts claims against Defendants for breach of the duty of good faith and fair dealing, violations of the New Jersey Franchise Practices Act, fraudulent inducement to contract, unjust enrichment, and breach of contract. *Each of these claims relates to multiple franchisee agreements* and an agreement of sale entered into by CJE and Defendant Yogurtland.") (emphasis added). Rather, Plaintiff argues that the Exception Clause contained in two of the seven Franchise Agreements is triggered in this case, because his claims fall within the jurisdiction of a probate or bankruptcy court. Plaintiff also contends that the Court should not compel arbitration in this case, because the Franchise Agreements do not specify one uniform method of arbitration. Finally, Plaintiff argues that, should the Court grant Defendants' motion to compel arbitration, the Court should order the parties to comply with the provisions of the Franchise Agreements that require mediation before resorting to arbitration. I will address each of those arguments in turn.

### A. The Exception Clause Is Not Applicable

Plaintiff argues that the claims at issue in this case are not subject to arbitration, because this matter falls within the jurisdiction of a probate court or bankruptcy court, and thus, the Exception Clause, contained in two of the seven Franchise Agreements, is applicable. Under

section 21.6 of the 2010 and 2011 Franchise Agreements, "the obligation[] to arbitrate . . . shall not bind either party regarding . . . any matter within the jurisdiction of a probate . . . or bankruptcy court." Accordingly, in deciding whether the Exception Clause relieves Plaintiff of the obligation to arbitrate his claims, the Court must determine whether Plaintiff's claims fall within the jurisdiction of a probate or bankruptcy court.

### 1. *Plaintiff's Claims are not within the Jurisdiction of a Probate Court*

New Jersey probate courts have jurisdiction over a wide variety of matters, including "the appointment of guardians and conservators, actions for settlement of fiduciary accounts, [] declarations of death, . . . [and] proceedings to probate wills and to settle questions that concern or touch on a decedent's estate." *In re Estate of Stockdale*, 196 N.J. 275, 301 (2008) (internal citations omitted); *see*, *e.g.*, NJ Ct. R. 4:82-85; 4:91-95. Additionally, probate courts have the power to issue assignments for the benefit of creditors, *see In re Gen. Assignment for Benefit of Creditors of Brill's Hardware Co.*, 67 N.J. Super. 289, 291 (Co. Prob. Div. 1961), to adjudicate disputes over the appointment of an assignee, to remove an assignee, and to adjudicate disputes over the compensation of an assignee. *See N.J.S.A.* 2A:19-1 *et seq.* However, unlike a federal bankruptcy court, there is no mechanism for a probate court to adjudicate substantive claims asserted by an assignee following an assignment for the benefit of creditors. NJ Ct. R. 4:80 *et seq*. Rather, the probate court's jurisdiction is limited to issues regarding the assignment itself, and once a valid assignment for the benefit of creditors occurs, any substantive claims asserted by the assignee are brought outside of probate court. *See N.J.S.A.* 2A:19-1 *et seq.*[3]

---

[3] For example, here, Plaintiff filed his Complaint in the New Jersey Superior Court's Law Division, rather than the Probate Part.

In this case, Plaintiff argues that because the New Jersey Superior Court, Probate Part issued an assignment for the benefit of creditors, assigning CJE's rights to Plaintiff, his claims fall within the jurisdiction of a probate court. However, contrary to Plaintiff's contention, the relevant question in determining whether the Exception Clause is triggered is not whether the assignment from CJE to Plaintiff was subject to the jurisdiction of the probate court; but instead, the critical question for the purposes of that inquiry is whether the claims asserted in the Complaint fall within the subject matter jurisdiction of the probate court. In that regard, the Exception Clause stipulates that the parties need not arbitrate "any matter within the jurisdiction of a probate . . . court." The language of that provision, taken at its plain and ordinary meaning, compels a finding that the Exception Clause is only triggered where the disputed *matter* at issue falls within the jurisdiction of a probate court. Here, the matter at issue – and that which would be submitted to arbitration – is Plaintiff's claims for breach of the duty of good faith and fair dealing, violations of the New Jersey Franchise Practices Act, fraudulent inducement to contract, unjust enrichment, and breach of contract. Compl. ¶¶ 54-79. To that end, the parties do not dispute the validity of the assignment, or any other matter falling within the jurisdiction of a probate court. Rather, this case involves a dispute arising from the Franchise Agreements, and resolution of Plaintiff's claims will not require this Court to determine any issues within the jurisdiction of a probate court. *Cf. Grey v. Johansson*, No. 13-7497, 2014 WL 4259432, at *4 (D.N.J. Aug. 26, 2014) (remanding case under probate exception to federal diversity jurisdiction, on the grounds that the "testamentary validity claims at issue in this litigation clearly lie at the core of state probate, and therefore exceed the Court's jurisdiction."). Moreover, the Court has not been able to locate, and Plaintiff has failed to identify, any authority stating that a probate

court has jurisdiction over the claims asserted in Plaintiff's Complaint, without any involvement of a will, estate, or appointment of guardianship.[4]

In short, even assuming that the assignment for the benefit of creditors was within the jurisdiction of a probate court, the parties are not litigating the validity of the assignment in this case. Rather, the instant action concerns Plaintiff's contract-related claims against Defendants. Because a probate court would not have subject matter jurisdiction over those claims, the Exception Clause is not triggered.

### 2. *Plaintiff's Claims are not within the Jurisdiction of a Bankruptcy Court*

Similarly, the Court finds that this action is not within the jurisdiction of a bankruptcy court, such that the Exception Clause would be applicable. Plaintiff argues that this case falls within the jurisdiction of a bankruptcy court, because the manner in which Plaintiff brought this suit – as an assignee of CJE, an insolvent company – "is similar in effect" to a chapter 7 bankruptcy proceeding. Pl.'s Opp. at 7. The Court disagrees.

Bankruptcy courts "fall outside of the constitutional authority of Article III and derive their authority from federal statutes." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004).

---

[4] The two cases relied on by Plaintiff in support of his argument that the instant action falls within the jurisdiction of a probate court - *In re Gen. Assignment for Benefit for Creditors of Xaviers, Inc.*, 66 N.J. Super. 561 (App. Div. 1961) and *In re Kleinberg*, 63 N.J. Super. 50 (Co. Prob. Div. 1960) – are inapposite. Both of those cases concerned the rights of a probate court to order the payment of commissions and counsel fees to an assignee, following an assignment for the benefit of creditors. *See In re Gen. Assignment for Benefit for Creditors of Xaviers, Inc.*, 66 N.J. Super. at 566 ("This appeal . . . is from a judgment of the Essex County Court, Probate Division, awarding commissions to the assignee and counsel fees to his attorneys, as well as reimbursing both for out-of-pocket disbursements on behalf of the estate."); *In re Kleinberg*, 63 N.J. Super. at 52 ("This is an application by the assignee for commissions and allowances."). Because neither case analyzed whether a probate court has jurisdiction over state law claims brought by an assignee, where the claims at issue did not relate to the assignment itself, they do not support Plaintiff's argument that the instant action is within the jurisdiction of a probate court.

Their jurisdiction is governed principally by 28 U.S.C. § 1334. *See id.* Section 1334 provides, in pertinent part:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
>
> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334. Section 1334 thus grants district courts original jurisdiction over bankruptcy cases and proceedings arising under title 11, including chapter 7 bankruptcy actions. *Id.*; *see Resorts*, 372 F.3d at 161; 11 U.S.C. §§ 301-66.

Here, the Court finds that the instant action does not fall within the subject matter jurisdiction of a bankruptcy court. Principally, at the time the Complaint was filed, Plaintiff, while allegedly insolvent, had not filed a petition for bankruptcy protection, and thus, this action cannot conceivably have an effect on an "estate" being administered in bankruptcy. In arguing that the assignment from CJE to Plaintiff "is similar in effect to a bankruptcy proceeding," Pl.'s Opp. at 7, Plaintiff misconstrues the scope of the Exception Clause. As the plain language of the Exception Clause indicates, the exception is only triggered where the claims asserted fall within the jurisdiction of a bankruptcy court – not where one party is simply insolvent. Had the parties wished to expand the scope of the Exception Clause to cover those claims, they were free to contract accordingly. However, absent a clear manifestation of intent to encompass Plaintiff's claims in the Exception Clause, the Court will not rewrite the terms of that provision to preclude arbitration in this case. Accordingly, because the instant action is not within the jurisdiction of

either a probate or bankruptcy court, the Court finds that the Exception Clause is not triggered in this case.[5]

### B. The Arbitration Provisions Are Not In Conflict

Next, Plaintiff argues that the Court should not compel arbitration because the arbitration provisions contained in the various Franchise Agreements do not specify a uniform method of arbitration. In response, Defendants contend that Plaintiff has failed to explain why the differences in the arbitration clauses would require separate arbitrations. The Court agrees.

Here, the 2010 and 2011 Franchise Agreements provide, in relevant part, that "[a]ny controversy or claim arising out of or relating to this Agreement . . . shall be submitted to arbitration before and in accordance with the commercial arbitration rules of the American Arbitration Association." Carlson Dec., Exs. A and B. By contrast, the remaining Franchise Agreements provide that the parties shall submit to "binding arbitration by and before a neutral, former judge chosen by agreement of the parties, or, if not agreed within ten (10) business days of written demand for arbitration, in accordance with the selection of a reputable arbitration services, including CPR, JAMS, and other services of equally good reputation." Carlson Dec., Exs. C-G. While these provisions differ slightly on the rules governing arbitration, those trivial differences do not preclude the Court from compelling arbitration. *See Joaquin v. Directv Grp. Holdings, Inc.*, No. 15-8194, 2016 WL 4547150, at *4 n. 1 (D.N.J. Aug. 30, 2016) ("Any differences between the two arbitration provisions do not render both unenforceable."). More importantly, the arbitration provisions in this case are not in fact incompatible. In that regard,

---

[5] The Court notes that even if the Exception Clause were triggered, it would only require arbitration of claims asserted in relation to the 2010 and 2011 Franchise Agreements. However, in light of the Court's finding that the Exception Clause is not applicable in this case, it need not consider which claims stem from the 2010 and 2011 Franchise Agreements, and which claims relate to the remaining five Franchise Agreements.

13

Plaintiff has not explained, and the Court cannot find, that the parties could not comply with both provisions by, for example, retaining as the arbitrator a neutral, former judge who is willing to proceed in accordance with the commercial arbitration rules of the American Arbitration Association. Accordingly, because the arbitration provisions contained in the Franchise Agreements are not in conflict, the different language of the provisions provides no basis for this Court to deny Defendants' motion to compel arbitration.

## C. Mediation

Finally, relying on the mediation provisions of the Franchise Agreements, Plaintiff argues that the Court should compel the parties to mediate their claims prior to resorting to arbitration. Conversely, Defendants maintain that by filing the Complaint, Plaintiff waived his right to invoke mediation as a shield to arbitration.

Here, however, the Court finds that it need not reach the issue of whether the parties are required to mediate Plaintiff's claims prior to resorting to arbitration. In that regard, the Third Circuit has explained that where the substantive arbitrability of the underlying claims is not in dispute, but the parties disagree as to the procedures to be followed, courts must compel arbitration and leave the procedural dispute to the arbitrator. *See Bell Atl.-Pennsylvania, Inc. v. Commc'ns Workers of Am., AFL-CIO, Local 13000*, 164 F.3d 197, 203 (3d Cir. 1999); *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 558 (1964) (finding that courts should compel arbitration where "arbitrability of the subject matter is unquestioned but a dispute arises over the procedures to be followed."); *NeuroSource, Inc. v. Jefferson Univ. Physicians*, No. 00-5401, 2001 WL 180264, at *5 (E.D. Pa. Feb. 14, 2001) ("Once the court has determined that the parties consented to arbitrate a particular dispute, any further matters surrounding the dispute must be resolved by the arbitrator."). Procedural disputes that should be submitted to the

arbitrator include issues of "waiver" and "exhaustion of prearbitration steps." *Bell Atl.-Pennsylvania*, 164 F.3d at 203; *see NeuroSource*, No. 00-5401, 2001 WL 180264, at *5 ("Courts traditionally hold that the question of whether the prerequisites to arbitration have been fulfilled are questions for the arbitrator and not for the court."). Here, the Court has already determined that Plaintiff's claims are subject to arbitration. Accordingly, to the extent the parties disagree as to whether mediation is required before arbitration, that dispute should be presented to the arbitrator.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's claims are arbitrable. Because Defendants requested a stay of the proceedings, the Court shall, pursuant to 9 U.S.C. § 3, stay this action pending arbitration. *See Lloyd v. Hovensa*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."). Accordingly, Defendants' motion is GRANTED and this action is STAYED. The action will be administratively terminated pending the outcome of the arbitration proceeding.

Dated: August 16, 2017 /s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge